QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Jennifer A. Kash (Bar No. 203679)
jenniferkash@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Amar L. Thakur (Bar No. 194025)
amarthakur@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, CA   90017-2543
Telephone: (213) 443 3000
Facsimile: (213) 443 3100

Dave Nelson*
davenelson@quinnemanuel.com
Chris Lawnicki*
chrislawnicki@quinnemanuel.com
500 West Madison Street, Suite 2450
Chicago, IL 60661
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

Kate Cassidy*
katecassidy@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

*Admitted *pro hac vice*

Attorneys for Symantec Corporation.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SYMANTEC CORPORATION,<br><br>Plaintiff<br><br>vs.<br><br>VEEAM SOFTWARE CORPORATION,<br><br>Defendant. | **SYMANTEC CORP.'S OPENING CLAIM CONSTRUCTION BRIEF**<br><br>Case No. 3:12-cv-00700-SI (consolidated for all purposes with Case No. 3:2012-cv-01035 SI) |

## TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ..................................................................................................1

II. LEGAL STANDARDS ........................................................................................1

III. U.S. PATENT NO. 6,931,558 ..............................................................................2

    A.  Overview of the '558 Patent Technology.........................................................2

    B.  Terms for Construction ...................................................................................3

        1.  Client device .........................................................................................3

        2.  Network boot .........................................................................................4

IV. U.S. PATENT NO. 7,093,086 ..............................................................................5

    A.  Overview of the '086 Patent Technology.........................................................5

    B.  Terms for Construction ...................................................................................5

        1.  a state of [first] virtual machine ...........................................................5

        2.  suspending the [first] virtual machine is performed responsive to a suspend command ................................................................................7

V.  U.S. PATENT NO. 7,191,299 ..............................................................................8

    A.  Overview of the '299 Patent Technology.........................................................8

    B.  Terms for Construction ...................................................................................8

        1.  storage object .........................................................................................8

        2.  Synchroniz[e][ing] said first point-in-time copy of said first storage volume and said second storage volume....................................9

VI. U.S. PATENT NO. 7,254,682 ............................................................................11

    A.  Overview of the '682 Patent Technology.......................................................11

    B.  Terms for Construction .................................................................................11

        1.  storage volume .....................................................................................11

        2.  deleting . . . item..................................................................................12

        3.  imag[ing] . . . item...............................................................................13

4.      snapshot view ........................................................................................14

VII.    CONCLUSION ........................................................................................................15

1

## <u>TABLE OF AUTHORITIES</u>

2                                                                                                   **Page**

3                                                           <u>Cases</u>

4   *CCS Fitness, Inc. v. Brunswick Corp.*,
5       288 F.3d 1359 (Fed. Cir. 2002)...........................................................................12

    *Falana v. Kent State University*,
6       669 F.3d 1349 (Fed. Cir. 2012)......................................................................13, 15

7   *Kara Tech. Inc. v. Stamps.com Inc.*,
8       582 F.3d 1341 (Fed. Cir. 2009)............................................................................7

    *MBO Laboratories, Inc. v. Becton, Dickinson & Co.*,
9       474 F.3d 1323 (Fed. Cir. 2007)..........................................................................11

10  *Martek Biosciences Corp. v. Nutrinova, Inc.*,
11      579 F.3d 1363 (Fed. Cir. 2009)............................................................................2

12  *Nazomi Communications, Inc. v. ARM Holdings, PLC*,
        403 F.3d 1364 (Fed. Cir. 2005)............................................................................5

13  *Phillips v. AWH Corp.*,
14      415 F.3d 1303 (Fed. Cir. 2005)....................................................................1, 2, 6

15  *Thorner v. Sony Computer Entertainment America LLC*,
        669 F.3d 1362 (Fed. Cir. 2012)........................................................................3, 4

16  *Verizon Services Corp. v. Vonage Holdings Corp.*,
17      503 F.3d 1295 (Fed. Cir. 2007)..........................................................................15

18  *Vitronics Corp. v. Conceptronic, Inc.*,
        90 F.3d 1576 (Fed. Cir. 1996)......................................................................1, 12

19                                                           <u>Rules</u>

20  Local Patent Rule 4-5(a) ..................................................................................1

21

22

23

24

25

26

27

28

1
2

## EXPLANATION OF CITATION FORMS

3  Emphasis

4  •      For emphasis, text has been both bolded and italicized.

5  •      Internal citations to quoted authorities have been omitted.

6  Declarations and Exhibits

7  •      Citations to "Thakur Decl., Ex. " are citations to exhibits to the Declaration of Amar L.
8         Thakur in Support of Symantec Corp.'s opening Claim Construction Brief, submitted on
         November 13, 2012.

9  •      Citations to "'558 patent" are citations to Thakur Decl., Ex. B ('558 Patent).

10 •      Citations to "'086 patent" are citations to Thakur Decl., Ex. C ('086 Patent).

11 •      Citations to "'299 patent" are citations to Thakur Decl., Ex. D ('299 Patent).

12 •      Citations to "'086 patent" are citations to Thakur Decl., Ex. E ('086 Patent).

13 Column and line citations to the patents appear as column:line-line.   For example, column 5,
14 lines 1-3 would be cited as 5:1-3.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiff Symantec Corporation ("Symantec") submits this opening brief in support of its proposed constructions for the disputed terms of its patents asserted against Defendant Veeam Software Corporation ("Veeam") under Local Patent Rule 4-5(a).

## I.   INTRODUCTION

The four patents asserted by Symantec are U.S. Patent Numbers 6,931,558 ("the '558 patent"), 7,093,086 ("the '086 patent"), 7,191,299 ("the '299 patent") and 7,254,682 ("the '682 patent"). These patents cover technologies for backing up and recovering data stored on computer systems.

As set forth in the Joint Claim Construction Statement (Dkt. 73), the parties agree on the construction of four terms in these patents. They disagree on the remaining terms.

## II.   LEGAL STANDARDS

The words of a claim are generally given the "ordinary and customary meaning" they would have to a person of ordinary skill in the art at the time of the invention. *Phillips v. AWH Corp.,* 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (en banc). For some claim terms, that meaning may be readily apparent so that construction "involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314. However, the meaning of a claim term as understood by persons of skill in the art is not always immediately apparent. *Id.* In such cases, "the court looks to those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean." *Id.* Those sources include both intrinsic evidence (the claims, specification, and prosecution history) and extrinsic evidence (e.g., dictionary definitions and treatises) concerning relevant scientific principles and the meaning of technical terms. *Id.* at 1314; *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582-83 (Fed. Cir. 1996). However, courts should be cautious in using extrinsic evidence because it "is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence." *Phillips*, 415 F.3d at 1319.

The claims themselves, including the context surrounding the words of the claim, provide substantial guidance as to the meaning of particular claim terms. *Phillips*, 415 F.3d at 1314.

Other claims of the patent can also be instructive, because "claim terms are normally used consistently throughout the patent." *Id.*

The claims "must be read in view of the specification, of which they are a part."  *Id.* at 1315, 1323. For example, "the specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess." *Id.* at 1316. If so, the inventor's definition governs.  *Martek Biosciences Corp. v. Nutrinova, Inc.*, 579 F.3d 1363, 1382 (Fed. Cir. 2009); *Phillips*, 415 F.3d at 1316.   Nevertheless, courts must be careful not to import limitations from the specification into the claim.  *Phillips*, 415 F.3d at 1323.   "For instance, although the specification often describes very specific embodiments of the invention," the Federal Circuit has "repeatedly warned against confining the claims to those embodiments." *Id.*

## III.    U.S. PATENT NO. 6,931,558

### A.     Overview of the '558 Patent Technology

The '558 patent is entitled "Computer restoration systems and methods" and is directed to recovering data after a major failure of a client device. '558 patent at 3:10-17. In traditional computing systems, major failures could prevent the computing system from booting up, and this presented problems to system administrators. *Id.* at 1:16-19. The administrator would be forced to reconfigure the operating system, applications, drivers, and other settings. *Id.* at 1:21-27. In addition, a boot disk was required at the location of the failed machine, and boot disks were not typically present at the location of each computing system on a network. *Id.* at 1:28-35. These problems made restoration of computing devices an inconvenient and time-consuming process. *Id.* at 1:35-41.

The invention of the '558 patent solved these problems by simplifying the restoration of data to a client device. Under the invention of the '558 patent, configuration and application data could be backed up from a client device over a network, and later restored to a client device over the network. *Id.* at 3:10-17. The backing up of configuration information saved the need for the system administrator to reconfigure the device upon restoration, and the ability to restore the

device over the network eliminated the need for the system administrator to be present at the location of the client device with a boot disk.

## B.    Terms for Construction

### 1.    *Client device*

| Symantec's Proposed Construction | Veeam's Proposed Construction |
|---|---|
| any processing or communications device capable of communicating with the server device over the network | the physical computer that is to be restored |

Every asserted claim from the '558 patent requires a client device. Symantec contends that, consistent with the specification, this term is broad enough to encompass both physical and virtual devices. Veeam argues that these are limited to physical devices despite a lack of disclaimer in the intrinsic evidence. Veeam's attempt to read this unsupported limitation into the claims is important, because it is an attempt to exclude restoration of virtual machines[1] from the scope of the claims.

Symantec's proposed construction reflects the scope of the description of the "client device" term in the specification. The specification defines a client computer as "**any** processing or communications device that is capable of communicating with the server computer 104 over the network 100." '558 patent at 4:5-10 (emphasis added). Furthermore, the specification evinces no intent to limit these devices to any particular type of device, physical or otherwise. The full scope of the definition from the specification should apply. *See Thorner v. Sony Computer Entertainment America LLC*, 669 F. 3d 1362, 1367 (Fed. Cir. 2012).

Veeam improperly narrows the scope of these terms in two ways. First, Veeam replaces the claim term "device" with the word "computer." The specification discloses that the term "device" encompasses computers, but is not limited to computers:

> [C]ombinations of client devices, such as the client computer 106 and others, as well as server devices, such as the server computer 104, its various server components 300, and others, including, for example, those elements, pluralities of any, certain ones, all of those elements, and even additional or alternative

---

[1]  A virtual machine is a collection of resources running on a physical machine that appears as an independent physical machine to executing top level operating systems and applications.

elements, and other combinations, are all possible in keeping with the scope of the embodiments herein.

'558 patent at 9:15-22. Replacing "device" with the narrower "computer" is not justified here.

Second, Veeam imports the requirement that this claim term is limited to a "physical" computer. As noted above, the specification describes a client computer as **any** processing device that is capable of communicating with a server computer. Any device that falls within this definition, whether physical or virtual, is within the scope of the claims. The full claim scope applies "unless the patentee explicitly redefines the term or disavows its full scope." *Thorner*, 669 F.3d at 1367. The patentee neither defined the term to include only physical devices, nor did the patentee disavow virtual devices.

### 2.  *Network boot*

| Claim Limitation | Symantec's Proposed Construction | Veeam's Proposed Construction |
|---|---|---|
| network boot | operation that starts or resets a client device over the network | a process that retrieves and loads a boot image over a network accessed by the client device rather than from a local disk |

Claims 1 and 18 of the '558 patent recite the "network boot" limitation. Veeam imports an additional limitation ("boot image"), itself a disputed claim term, presumably to allow Veeam the non-infringement arguments available to it under its "boot image" construction.

The plain meaning of "network boot" is an operation that starts or resets a device over the network, and the specification reflects this usage. *See, e.g.*, '558 patent at Abstract ("The client device is booted over the network, rather than locally to the client device by boot disk or otherwise."); 6:43-45 ("The client boot program is delivered over the network 100 to the client computer 106 once the client computer 106 initializes over the network in a network boot operation."). Symantec's construction captures the meaning used in the specification.

Veeam's proposed construction imports limitations not required by the intrinsic evidence. In particular, Veeam requires the network boot to "retrieve[] and load[] a boot image." The patent specification treats the network boot and the boot image as separate and distinct concepts in the restore process. *See, e.g.*, '558 patent at Fig. 6 (illustrating "network[] boot" as step 602, later followed by copying to the client "the boot image from boot server" at step 606). Moreover,

claim 18 recites the "network boot" limitation, yet includes no reference to a boot image. Claim 19, which depends on claim 18, adds the "boot image" limitation. This creates a presumption under the doctrine of claim differentiation that the boot image is not required by claim 18. *See Nazomi Communications, Inc. v. ARM Holdings, PLC*, 403 F.3d 1364, 1370 (Fed. Cir. 2005) ("The concept of claim differentiation 'normally means that limitations stated in dependent claims are not to be read into the independent claim from which they depend.'").

## IV.   U.S. PATENT NO. 7,093,086

### A.   Overview of the '086 Patent Technology

The '086 patent is directed to backup and disaster recovery mechanisms in computer systems, particularly those involving virtual machines. '086 patent at 1:8-10. Virtual machines are software implementations of physical machines, and include virtual hardware capable of running operating systems and other applications. *Id.* at 3:27-4:6. These virtual machines include virtual disks, which are mapped to physical disks. *Id.* at 3:61-63. Just as with physical machines, the data on a virtual machine must be backed up in case the data is lost.

The '086 patent addresses issues related to backing up the state of a virtual machines so that in the event of a disaster, the captured state from the virtual machine is preserved. *Id.* at 1:46-59. In particular, the '086 patent teaches that the state may be captured either while the virtual machine continues execution, or by suspending the virtual machine and copying the state from the suspended virtual machine. *Id.* at 3:17-20.

### B.   Terms for Construction

#### 1.   *a state of [first] virtual machine*

| Symantec's Proposed Construction | Veeam's Proposed Construction |
|---|---|
| information regarding the first virtual machine | at least a portion of a virtual machine's memory and disk(s) to permit the virtual machine to resume execution of the application at the point in time the state was captured |

Symantec contends that the term "a state of a first virtual machine" is used broadly by the specification to describe information regarding a first virtual machine. Veeam's proposed construction imports limitations that improperly narrow the claims.

The '086 patent specification describes a variety of data that may be included as part of the state of a virtual machine:

> The state may include not only files written by the application, but uncommitted changes to files which may still be in the memory within the virtual machine, the state of the hardware (including the processor 32, the memory in the virtual machine, etc.) within the virtual machine, etc.

'086 patent at 4:28-33. Individual claims recite the particular data that is required of the state for that claim. For example, claim 1 of the '086 patent requires instructions that "capture a state of a first virtual machine . . . wherein the state of the first virtual machine comprises the at least one file." '086 patent at claim 1. *See also id.* at claim 9 (reciting instructions for capturing the first state wherein "the first state includes the first virtual disk and a corresponding log of uncommitted updates to the first virtual disk").

"[T]he claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips*, 415 F.3d at 1312. The language of the asserted claims requires "a state of a first virtual machine" to "comprise[]the at least one file." This is reinforced by the prosecution history, which teaches that "[t]he state of the first virtual machine comprises the file." *See, e.g.*, Thakur Decl., Ex. A ('086 patent, 7/22/05 App. Br. at 3-4). *See also Phillips*, 415 F.3d at 1317 (explaining that "a court 'should also consider the patent's prosecution history, if it is in evidence.'"). The patent specification uses the term "state" broadly to potentially include any of a variety of information regarding the virtual machine, and the construction should reflect this usage. *See Phillips*, 415 F.3d at 1315.

Veeam's proposed construction should be rejected because it improperly restricts the scope of this limitation. The claims require the state to "comprise[] the at least one file." *See* '086 patent at claims 1, 12.   Veeam argues that the state must also include "at least a portion of a virtual machine's memory." The requirement that the state also include "at least a portion of the memory" is notably missing from these claims, and Veeam should not be permitted to add this limitation.

Veeam's proposed construction also adds the requirement that the captured state "permit the virtual machine to resume execution of the application at the point in time the state was

captured." This goes beyond the language of the claim, and has no basis or support in the specification, which requires only that the state comprise the at least one file.

**2.    *suspending the [first] virtual machine is performed responsive to a suspend command***

| Symantec's Proposed Construction | Veeam's Proposed Construction |
|---|---|
| in response to receiving a suspend command, pausing the execution of the virtual machine | in response to receiving a suspend command, pausing the execution of the virtual machine and storing the state on a storage device to which the first virtual machine is suspendable |

The parties agree that "suspending" requires pausing the execution of a virtual machine in response to a suspend command. Veeam, however, imports an additional limitation not required by the claims.

Veeam attempts to read in the requirement that "suspending" the virtual machine not only suspends the virtual machine, but also stores the state to a particular storage device. The specification discloses that the state ***may*** be stored on a storage device in response to the suspend command, but there is no requirement that the state ***must*** be stored in response to the suspend command. *See* '086 patent at 4:18-28. Veeam's attempt to import an embodiment from the specification should be rejected. *See Kara Tech. Inc. v. Stamps.com Inc.*, 582 F.3d 1341, 1348 (Fed. Cir. 2009) ("The patentee is entitled to the full scope of his claims, and we will not limit him to his preferred embodiment or import a limitation from the specification into the claims."). Under Veeam's construction, the system could receive a suspend command and pause the virtual machine, yet still not meet this limitation. The specification does not limit the term "suspending" in this manner.

Veeam's construction is inconsistent with the claim language as well. Claim 1 recites a "first virtual machine compris[ing] at least one virtual disk ***storing at least one file*** used by at least one application executing in the first virtual machine, and wherein the state of the first virtual machine comprises the at least one file" (emphasis added). The state comprises the file, and the file is already stored on a storage device; there is no need to store the state (which

1   comprises the file) on another storage device when the virtual machine is suspended as Veeam

2   proposes.

3   **V.     U.S. PATENT NO. 7,191,299**

4       **A.     Overview of the '299 Patent Technology**

5           The '299 patent is entitled "Method and system of providing periodic replication" and

6   teaches a system for replicating data from one computing system to another. The '299 patent

7   teaches that by using replication, a "copy of data is distributed and stored at one or more remote

8   sites." '299 patent at 1:21-24. The benefit of replicated data is that in the event of a system crash

9   at a primary computing system, applications may be brought back online immediately at the

10  replicated system. *Id.* at 9:19-24.

11          The '299 patent teaches a specific way of performing data replication, through the use of

12  what it calls a "snappoint storage object." *Id.* at 5:11-24. The storage object, as recited by the

13  asserted claims, consists of two structures: a preserved copy of the primary storage volume as it

14  existed at a specific time (called a "point-in-time copy"), and a map used to track which data

15  blocks have changed since that point-in-time copy was captured. *See, e.g.,* '299 patent at claim 1.

16  The replication software uses the point-in-time copy to replicate data from the from the primary

17  storage volume to the secondary storage volume. *Id.* at 4:25-29. By using the point-in-time copy

18  rather than the primary storage volume itself, the system can replicate the primary storage

19  volume without suspending access. *Id.* The map is used to track changes to the storage volume

20  with respect to the point-in-time copy, allowing incremental replication to be performed. *Id.* at

21  6:25-39. Incremental replication is more efficient than full replication because less data needs to

22  be copied.

23      **B.     Terms for Construction**

24          **1.     *storage object***

| Symantec's Proposed Construction | Veeam's Proposed Construction |
|---|---|
| information about the changes to a volume with respect to a point in time image of that volume | a structure created to hold corresponding items |

The term "storage object" is recited in claims 1, 5, 12-14, and 16 of the '299 patent. Symantec proposes that this term be given the meaning provided by the specification. Veeam proposes that this term be construed to require structure that is not required by the claims.

According to the specification, a "snappoint storage object provides information about the changes to a volume with respect to a point in time image of that volume." '299 patent at 5:11-13. Symantec's construction captures this meaning. This construction is consistent with the use of the term throughout the claims and the specification.

Veeam's interpretation requires the storage object to have distinct structure beyond the point-in-time copy and storage volume map required by the claims and specification. This finds no support in the intrinsic evidence. For example, Figures 4a through 4d, which illustrate "storage objects," do not include any independent structure for the storage object beyond the point-in-time copy and the storage volume map. Similarly, Figure 2 shows "a 'snappoint' storage object including a point-in-time copy 216 or 'snapshot' of said primary data volume 210a and a data volume map 218." '299 patent at 4:33-39. These are illustrated as separate entities, not within a single structure created to hold these items. '299 patent at Figure 2. Veeam's construction imports additional structural limitations beyond what are required by the claims and specification.

## 2. *Synchroniz[e][ing] said first point-in-time copy of said first storage volume and said second storage volume*

| Symantec's Proposed Construction | Veeam's Proposed Construction |
|---|---|
| transferring a full or incremental copy of data from the point-in-time copy to the second storage volume | initially copying all data from the point-in-time copy to the second storage volume so that only changes to the first storage volume will be copied thereafter |

The "synchronizing" term is recited in claims 1 and 14 of the '299 patent. Symantec's construction recognizes that, consistent with the specification, the term "synchronizing" is not limited to initial synchronization. Veeam's proposed construction limits the synchronizing term to a single embodiment in the specification and imports limitations that conflict with other expressly disclosed embodiments.

The specification uses the term "synchronize" in the context of performing both full and incremental replications. For example, the specification discusses initial synchronization in which a full replica of the first storage volume is transferred to the second storage volume. *See* '299 patent at 4:16-25. The specification also teaches that some prior art systems maintained synchronization by sending each primary data volume update to the replicated copy:

> When replicating synchronously, volume replicators 108 are used ***to maintain primary and secondary site data synchronization***. A write request from application 102a to a synchronously replicated volume such as primary data volume 110a is considered complete as soon as the update is logged at the primary node 100a, and, transmitted to and acknowledged by all secondary sites . . . .

'299 patent at 2:6-12 (emphasis added). Under the teachings of the '299 patent, synchronization is maintained through periodic replication. *See* '299 patent at 6:5-7 ("Once the initial synchronization is completed as described with respect to FIG. 2, periodic replication may be performed."). *See also id.* at claim 2. The term "synchronization" must be broad enough to capture both the initial and incremental instances of replication.

Veeam's proposed construction suffers from two problems. First, Veeam's construction limits the claim term "synchronization" to "initial synchronization." As discussed above, the term "synchronization" is broad enough to encompass both the initial synchronization and later synchronization performed through periodic replication. Moreover, Veeam limits the initial synchronization to the case in which "all" of the data is copied from the point-in-time copy, even though initial synchronization is not so limited by the specification.

Veeam's second error is importing requirements that conflict with embodiments of the specification, specifically the requirement that "only changes to the first storage volume will be copied" after the initial synchronization. The specification explicitly teaches that incremental replication may copy more than just the changed data:

> According to one embodiment of the present invention, each region depicted (e.g., within primary data volume 400, snapshot volume 404, data volume maps 402, 408, and validation map 406) corresponds to a fixed amount of data within storage such as an individual block or a fixed number of bytes. Accordingly, entire regions are transferred or copied even in case the data change is less in size

than the entire region. ***This may result in sending more data that what is actually required***.

'299 patent at 8:6-14 (emphasis added). Veeam's construction excludes embodiments from the specification, making it presumptively incorrect. *See MBO Laboratories, Inc. v. Becton, Dickinson & Co.*, 474 F. 3d 1323, 1333 (Fed. Cir. 2007) ("[A] claim interpretation that excludes a preferred embodiment from the scope of the claim is rarely, if ever, correct.") (citation omitted).

## VI.   U.S. PATENT NO. 7,254,682

### A.   Overview of the '682 Patent Technology

The '682 patent is entitled "Selective file and folder snapshot image creation" and teaches a particular way of creating backup images. The '682 patent addresses the problem of how to make images of storage volumes that include or exclude certain files. '682 patent at 1:6-10. Traditional systems handled this problem by making a full copy of the storage volume, deleting the undesired files from the storage volume, imaging the storage volume, and then restoring the deleted files from the copy. *Id.* at 1:6-17. This has the problem of wasting a large amount of storage and processing resources from the computing system. *Id.* at 1:35-48.

The '682 patent solves this problem by using snapshots, which provide a copy of the storage volume at a particular point in time without the need to create a separate image of the storage volume. *Id.* at 1:58-61. The imaging software uses the snapshot view of the storage volume, rather than the user view of the storage volume, to create an image that includes the desired files and folders. *See, e.g., id.* at 2:28-33. This approach is more efficient than the traditional methods.

### B.   Terms for Construction

#### 1.   *storage volume*

| Symantec's Proposed Construction | Veeam's Proposed Construction |
|---|---|
| storage on a computer-readable storage medium, which is organized by at least one file system | plain and ordinary meaning |

The term "storage volume" is recited in nine asserted claims of the '682 patent. Symantec's construction reflects the fact that the patentee acted as his own lexicographer with respect to this term, whereas Veeam's proposed construction avoids giving the meaning explicitly disclosed by the patentee.

The specification of the '682 patent explicitly defines the term "volume." *See* '682 patent at 3:16-18 ("A 'volume' is a fixed amount of storage on a disk, tape, memory stick, or other computer-readable storage medium, which is organized by at least one file system."). Symantec's proposed construction captures this explicit definition. *See Vitronics Corp. v. Conceptronic, Inc.*, 90 F. 3d 1576, 1582 (Fed. Cir. 1996) ("[A] patentee may choose to be his own lexicographer and use terms in a manner other than their ordinary meaning, as long as the special definition of the term is clearly stated in the patent specification or file history.").

Veeam's proposed construction disregards the definition set forth by the patentee in the specification, and instead argues that "storage volume" should be given its plain and ordinary meaning. The ordinary meaning of a term does not apply in cases where the patentee acted as his own lexicographer. *See CCS Fitness, Inc. v. Brunswick Corp.*, 288 F. 3d 1359, 1366 (Fed. Cir. 2002) ("[T]he claim term will not receive its ordinary meaning if the patentee acted as his own lexicographer and clearly set forth a definition of the disputed claim term in either the specification or prosecution history.").

### 2. *deleting . . . item*

| Symantec's Proposed Construction | Veeam's Proposed Construction |
| --- | --- |
| removing or hiding some or all of the data of an item | hiding an item from applications, removing the ability for an item to be accessed, or removing all traces of the item from storage |

The "deleting" term is used in claims 1, 3, 11, and 26 of the '682 patent. Symantec's proposed construction reflects the fact that the patentee intended the "deleting" term to apply broadly, whereas Veeam improperly restricts the definition to examples from the specification.

The specification of the '682 patent explicitly teaches that the term "deleting" does not require full deletion of an item, and gives other examples of "deleting":

> The term "deleting" does not necessarily require completely removing all traces of an item's data from storage. It can be sufficient to delete an item by marking the item as being hidden from applications such as word processors, databases, and spreadsheets. In a system without snapshots enabled, deleting would generally mark as available the space allocated to the deleted item. In a snapshot-enabled system, however, some data deleted after the snapshot was enabled can be recovered.

'682 patent at 3:38-36. The same section of the specification teaches that these specific examples "are given to illustrate aspects of the invention, but those of skill in the relevant art(s) will understand that other examples may also fall within the meaning of the terms used, and within the scope of one or more claims" '682 patent at 2:54-58. The open-ended explanation indicates that the patentee intended to treat the "deleting" term broadly, and Symantec's proposed construction reflects that breadth.

Veeam proposes construing the "deleting" term to include only those examples disclosed in the specification. This approach to claim construction has been rejected by the Federal Circuit. *See Falana v. Kent State University*, 669 F. 3d 1349, 1355 (Fed. Cir. 2012) ("[T]his court has 'cautioned against limiting the claimed invention to preferred embodiments or specific examples in the specification.'") (citations omitted). Moreover, the specification explicitly states that the examples should not be read as an exhaustive list. *See* '682 patent at 2:54-58. Veeam's construction improperly restricts the scope of the claim term and should be rejected.

### 3.   *imag[ing] . . . item*

| Symantec's Proposed Construction | Veeam's Proposed Construction |
|---|---|
| creating a backup of an item using a block-by-block backup, not a file-by-file backup | copying only those data blocks associated with the desired item |

This term is recited in claims 1, 3, and 4. Symantec's construction reflects the fact that the patentee acted as his own lexicographer with respect to this term, whereas Veeam's proposed construction disregards the patentee's definition.

The patentee acted as a lexicographer for the "imaging" term. The specification states that "[i]n describing the invention, the meaning of important terms is clarified, so the claims

must be read with careful attention to these clarifications." '682 patent at 2:52-54. In accordance

with this teaching, the specification clarifies the "image" term:

> For instance, a distinction is noted above between file-by-file approaches, on the one hand, and sector-by-sector/cluster-by-cluster/other block-by-block approaches, on the other hand. That distinction helps define the term "image" in the claims and elsewhere in this document. A file-by-file backup is not an "image" in terms of the present invention, regardless of whether the term image is used in other documents to include file-by-file backup results. Likewise, creating a file-by-file backup is not "imaging" according to the meaning intended here.

'682 patent at 2:63-3:5. *See also id.* at 1:18-34. Symantec's construction captures this

clarification.

Veeam's construction fails to exclude file-by-file backups as required by the

specification. Veeam's construction also imports the requirement that "*only* those data blocks

associated with the desired item" are copied. The language of the asserted claims does not

include an "only" requirement. In fact, other claims explicitly include this language. *See* '682

patent at claim 13 (claiming "creation of an image that is made by *imaging the desired items*

*only* (no undesired items)") (emphasis added).   Veeam's construction ignores a clear exclusion

from the specification while importing limitations.

### 4.    *snapshot view*

| Symantec's Proposed Construction | Veeam's Proposed Construction |
| --- | --- |
| state of the storage volume at the time the snapshot was created | snapshot contents presented to users and application software |

The term "snapshot view" is recited in claims 3, 4, 11, and 26 of the '682 patent.

Symantec's construction is consistent with the intrinsic evidence, whereas Veeam's construction

seeks to import the limitation that the snapshot contents are "presented to users and application

software," which is not required by the claims and conflicts with embodiments in the

specification.

The claims and specification uses the term "snapshot view" to refer to the state of the

storage volume at the time the snapshot was created. For example, unasserted claim 24 describes

the snapshot view as "present[ing] information about folders in a state other than their present

state." This is consistent with the specification, which teaches that the snapshot view is used "to present information about files in a state other than their present state." '682 patent at 13:1-6. The state that is captured by a snapshot is that of the storage volume at a point-in-time when the snapshot was created. *See* '682 patent at 4:31-36. *See also* '682 patent at 12:63-65 (comparing the user view to the snapshot view).

Veeam's construction imports language from the specification stating that "[a] snapshot view . . . includes a set of items presented to users and applications software." '682 patent at 4:24-26. Veeam interprets this as a requirement that the snapshot view must be presented to users. The patent specification, however, teaches embodiments in which the snapshot view is only presented to the imaging software, not the user:

> If continued use 510 of the volume will be made while the snapshot view is being modified, then the snapshot driver 614 maintains at least two block lists 622, and there are at least three preserved volume states represented in data blocks 620: the state in which snapshotting was initially enabled 506, the subsequently modified 510 *user state as presented to the user* and to non-imaging user applications such as word processors and spreadsheets, *and the subsequently modified 514 snapshot state as presented to the imaging application* 634.

'682 patent at 6:56-66. Veeam's construction excludes this embodiment, and is presumptively incorrect. *See Verizon Services Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1305 (Fed. Cir. 2007) ("We normally do not interpret claim terms in a way that excludes disclosed examples in the specification."). Furthermore, the specification describes embodiments for removing undesired items that do not rely on the user interface. *See* '682 patent at 6:15-21. *See also id.* at 13:24-35 (describing embodiments in which the deletion occurs automatically and others where deletion is manual). Although the snapshot view may be presented to the user, that is not required by the claims. Veeam's attempt to read particular embodiments into this limitation should be rejected. *See Falana*, 669 F. 3d at 1355.

## VII.    CONCLUSION

For the foregoing reasons, Symantec respectfully requests the Court to adopt its proposed constructions.

1   DATED: November 13, 2012

QUINN EMANUEL URQUHART &
SULLIVAN


By:  _/s/Amar L. Thakur_____


Jennifer A. Kash (Bar No. 203679)
jenniferkash@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Amar L. Thakur (Bar No. 194025)
amarthakur@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, CA   90017-2543
Telephone: (213) 443 3000
Facsimile: (213) 443 3100

Dave Nelson*
davenelson@quinnemanuel.com
Chris Lawnicki*
chrislawnicki@quinnemanuel.com
500 West Madison Street, Suite 2450
Chicago, IL 60661
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

Kate Cassidy*
katecassidy@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100


*Admitted *pro hac vice*

Attorneys for Plaintiff Symantec Corporation

<u>CERTIFICATE OF SERVICE</u>

I, Chris Lawnicki, hereby certify that on November 13, 2012, I caused to be served true copies of SYMANTEC CORP.'S OPENING CLAIM CONSTRUCTION BRIEF on the attorneys for the Defendants, as designated below, by email:

> Gregory P. O'Hara
> Lisa A. Cole
> NIXON PEABODY LLP
> 2 Palo Alto Square
> 3000 El Camino Real, Suite 500
> Palo Alto, CA 94306
> gohara@nixonpeabody.com
> lcole@nixonpeabody.com
>
> Mark Fox Evens
> Byron L. Pickard
> STERNE, KESSLER, GOLDSTEIN & FOX PLLC
> 1100 New York Avenue N.W.
> Washington, D.C. 20005
> mevens@skgf.com
> bpickard@skgf.com

**Attorneys for Defendant Veeam Software Corp.**


*/s/Chris Lawnicki*_____

QUINN EMANUEL URQUHART
& SULLIVAN, LLP
500 West Madison Street, Suite 2450
Chicago, IL 60661
Telephone: (312) 705-7400
Facsimile: (312) 705-7401