IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SYMANTEC CORPORATION,

        Plaintiff,

  v.

VEEAM SOFTWARE CORPORATION,

        Defendant.

No. C 12-0700 SI

**CLAIM CONSTRUCTION ORDER**

On September 18, 2013, the Court held a *Markman* hearing regarding the construction of disputed claim terms in four patents owned by the plaintiff. Having considered the arguments of counsel and the papers submitted, the Court construes the disputed claim terms as follows.

**BACKGROUND**

This is a consolidated patent infringement action initiated by plaintiff Symantec Corporation against defendant Veeam Software Corporation, pertaining to U.S. Patents No. 7,191,299 ("the '299 patent"), No. 7,093,086 ("the '086 patent"), No. 7,024,527 ("the '527 patent"), 7,480,822 ("the '822 patent"), 7,831,861 ("the '861 patent"), and 8,117,168 ("the '168 patent").[1] On March 8, 2013, the Court construed the disputed terms for the '299 and '086 patents. Docket No. 105, Claim Construction Order. The parties now request that the Court construe nine disputed terms from the '168, '527, '822,

---

[1] The '299 patent is asserted in the present case, Case No. C 12-700. The '086 patent was originally asserted in Case No. C 12-1035, which has been consolidated with the present case. Docket No. 26. The '527, '822, '861, and '168 patents were originally asserted in Case No. C 12-5443, which has also been consolidated with the present case. Docket No. 157. The Court has dismissed with prejudice U.S. Patents No. 7,254,682 and 6,931,558 from the case. Docket Nos. 135, 160.

and '861 patents.

Symantec is a software provider which has developed and owns patents related to backup and recovery software. The '168 patent is directed to methods and systems for creating and managing backups using virtual-disk files. '168 Patent at 1:51-52. The '527 patent is directed to systems and methods for performing data restores from backups while applications are active and processing the data being restored. '527 Patent at 2:19-21. The '822 patent is directed to mechanisms for restoring access to running states of multiple primary computing systems onto a single computing system. '822 Patent at 1:65-2:1. The '861 patent is directed to techniques for efficient restoration of granular application data. '861 Patent at 1:44-45. Symantec accuses Veeam's Backup & Replication line of products and related services—including, for example, Backup & Replication v6.1, Veeam Backup Free Edition, and Veeam's Universal Application-Item Recovery—of infringing the '168, '527, '822, and '861 patents. No. C 12-5443, Docket No. 1, Compl. ¶ 15.

## LEGAL STANDARD

Claim construction is a matter of law. *Markman v. Westview Instr., Inc.*, 517 U.S. 370, 372 (1996). Terms contained in claims are "generally given their ordinary and customary meaning." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc). "[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Id.* at 1312. In determining the proper construction of a claim, a court begins with the intrinsic evidence of record, consisting of the claim language, the patent specification, and, if in evidence, the prosecution history. *Id.* at 1313; *see also Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). "The appropriate starting point . . . is always with the language of the asserted claim itself." *Comark Communications, Inc. v. Harris Corp.*, 156 F.3d 1182, 1186 (Fed. Cir. 1998); *see also Abtox, Inc. v. Exitron Corp.*, 122 F.3d 1019, 1023 (Fed. Cir. 1997).

Accordingly, although claims speak to those skilled in the art, claim terms are construed in light of their ordinary and accustomed meaning, unless examination of the specification, prosecution history, and other claims indicates that the inventor intended otherwise. *See Electro Medical Systems, S.A. v.*

2

*Cooper Life Sciences, Inc.*, 34 F.3d 1048, 1053 (Fed. Cir. 1994). While claims are interpreted in light of the specification, this "does not mean that everything expressed in the specification must be read into all the claims." *Raytheon Co. v. Roper Corp.*, 724 F.2d 951, 957 (Fed. Cir. 1983). For instance, limitations from a preferred embodiment described in the specification generally should not be read into the claim language. *See Comark*, 156 F.3d at 1187. However, it is a fundamental rule that "claims must be construed so as to be consistent with the specification." *Phillips*, 415 F.3d at 1316. Therefore, if the specification reveals an intentional disclaimer or disavowal of claim scope, the claims must be read consistently with that limitation. *Id.*

Finally, the Court may consider the prosecution history of the patent, if in evidence. *Markman*, 52 F.3d at 980. The prosecution history limits the interpretation of claim terms so as to exclude any interpretation that was disclaimed during prosecution. *See Southwall Technologies, Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed. Cir. 1995). In most situations, analysis of this intrinsic evidence alone will resolve claim construction disputes. *See Vitronics*, 90 F.3d at 1583. Courts should not rely on extrinsic evidence in claim construction to contradict the meaning of claims discernable from examination of the claims, the written description, and the prosecution history. *See Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1308 (Fed. Cir. 1999) (citing *Vitronics*, 90 F.3d at 1583). However, it is entirely appropriate "for a court to consult trustworthy extrinsic evidence to ensure that the claim construction it is tending to from the patent file is not inconsistent with clearly expressed, plainly apposite, and widely held understandings in the pertinent technical field." *Id.* Extrinsic evidence "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Phillips*, 415 F.3d at 1317. All extrinsic evidence should be evaluated in light of the intrinsic evidence. *Id.* at 1319.

///

///

///

# DISCUSSION

## I. Terms on Which the Parties Agree

| Patent | Term | Construction |
|---|---|---|
| '168 patent | "data-storage entity" | "at least a portion of a data storage medium"[2] |
| '527 patent | "file server" | "computing system that handles requests for files"[3] |
| '822 patent | "computing system" | "any device or system that includes at least one processor, and a memory capable of having thereon computer-executable instructions that may be executed by the processor"[4] |
| '861 patent | "recovery changes" | "changes to the one or more backup files made during the recovery process"[5] |

## II. Disputed Terms for Construction

### A. The '168 Patent

The '168 patent ("Methods and Systems for Creating and Managing Backups Using Virtual Disks") is directed to methods and systems for creating and managing backups using virtual-disk files. '168 Patent at 1:51-52. According to the patent, virtualization—including virtualization by converting a backup file to a virtual-disk file—may reduce overall system costs, including those associated with backup and recovery. *Id.* at 1:38-40. "Unfortunately, converting backup files to virtual-disk files may consume additional data storage and may involve substantial input/output ('I/O') and processing." *Id.* at 1:45-47. The '168 patent addresses this problem. A representative claim reads (terms to be construed in bold):

---

[2] No. C 12-5443, Docket No. 71, Veeam's Responsive Claim Construction Brief ("Def. Br.") at 1.

[3] No. C 12-5443, Docket No. 67, Symantec's Opening Claim Construction Brief ("Pl. Br.") at 1.

[4] No. C 12-5443, Docket No. 62, Joint Claim Construction and Prehearing Statement at 1.

[5] *Id.*

4

> 1. A computer-implemented method for backing up data, at least a portion of the method being performed by a computing system comprising at least one processor, the method comprising:
> at a first point in time, backing up at least a portion of a data-storage entity to a first virtual-disk file;
> capturing, in a second virtual-disk file, at least one change made to data in the data-storage entity after the first point in time;
> **creating a parent-child relationship between the first virtual-disk file and the second virtual-disk file**, the first virtual-disk file being a parent of the second virtual-disk file;
> copying data stored in the second virtual-disk file to the first virtual-disk file so that the first virtual-disk file comprises a synthetic backup that includes the at least one change made to data in the data-storage entity after the first point in time;
> storing the first virtual-disk file that comprises the synthetic backup in a manner that enables at least one virtual machine to boot from the stored first virtual-disk file;
> creating a first empty virtual-disk file;
> **creating a parent-child relationship** between the first virtual-disk file and the first empty virtual-disk file, the first virtual-disk file being a parent of the first empty virtual-disk file;
> **retargeting** the first empty virtual-disk file to provide a first retargeted virtual-disk file and to enable the at least one virtual machine to boot from the first virtual-disk file.

*Id.* at 15:13-41.

### 1.    *retarget[ing]*

| Symantec | Veeam |
|---|---|
| "enabl[e][ing] a virtual machine to boot from a backup virtual-disk file" | "target[ing] at least a second time" |

Symantec's proposed construction is supported by the intrinsic record. Independent claims 1, 12, and 14 of the '168 patent state that the purpose of retargeting is to enable the virtual machine to boot from the first virtual-disk file. '168 Patent at 15:39-41, 16:58-61, 18:17-19; *see also id.* at 2:12-15 ("Some embodiments may include a recovery module that may retarget the empty virtual-disk file to enable a virtual machine to boot from the first virtual-disk file."). In addition, the specification explains that "[r]etargeting empty virtual-disk file 126 may include any action that enables a virtual machine to boot from backup virtual-disk file 124." *Id.* at 6:58-60. Therefore, the claim language and the specification explain that retargeting is an action that enables a virtual machine to boot from the first virtual-disk file.

Veeam's proposed construction does not have any support in the intrinsic record. Veeam relies

5

1 on the dictionary definition of the prefix "re," meaning "again," to support its construction that
2 retargeting means targeting at least a second time. Def. Br. at 3. However, extrinsic evidence cannot
3 be used to alter a claim construction dictated by a proper analysis of the intrinsic evidence. *On-Line*
4 *Techs., Inc. v. Bodenseewerk Perkin-Elmer GmbH*, 386 F.3d 1133, 1139 (Fed. Cir. 2004). In addition,
5 the words "target" or "targeting" never appear in the '168 patent, and Veeam has failed to provide an
6 explanation of what the word "target" means under its proposed construction or how it occurs at least
7 twice. Therefore, the Court declines to adopt Veeam's proposed construction. Accordingly, the Court
8 construes **retarget[ing]** as: **tak[e][ing] an action that enables a virtual machine to boot from a**
9 **backup virtual-disk file.**

### 2. *creat[e][ing] a parent-child relationship between the first virtual-disk file and the second virtual-disk file*

| Symantec | Veeam |
|---|---|
| "logically connecting the first and second virtual-disk files" | **Original Construction:** "logically connect[ing] the first virtual and second virtual-disk files so that the second virtual-disk file inherits data from the first virtual-disk file"<br><br>**Modified Construction:** "logically connecting two virtual-disk files so that changes intended for the parent virtual-disk file are instead stored in the child virtual-disk file" |

20 The parties agree that this term requires logically connecting two virtual-disk files. But, the
21 parties disagree as to whether this term requires that the changes intended for the parent virtual-disk file
22 are instead stored in the child virtual-disk file. Veeam's proposed construction is supported by the
23 specification. The specification explains that under the parent-child relationship, the child virtual-disk
24 file holds incremental changes made to data since the parent virtual-disk file was created. '168 Patent
25 at 5:67-6:3; *see also id.* at 6:50-51, 6:66-7:1. The specification further explains that as long as the parent
26 virtual-disk file remains unchanged, it may continue to be used as a parent for additional incremental
27 backups. *Id.* at 7:1-4; *see also id.* at 7:24-27 ("After the data stored in backup virtual-disk file 128 is
28 copied to backup virtual-disk file 124, backup virtual-disk file 124 may no longer be a valid parent of

6

empty virtual-disk file 126."); Doc. No. 67-2, Chen Decl. Ex. I at 16 (prosecution history). This definition of the parent-child relationship is also supported by the claim language. For example, independent claim 1 covers a method of creating a parent-child relationship between the first virtual-disk file and the second virtual-disk file and then later copying data stored in the second virtual-disk file, including changes made after the first point in time, to the first virtual-disk file. '168 Patent at 15:22-30. For the data with the changes to be transferred to the first virtual-disk file, the parent file, the data must first be stored in the second virtual disk file, the child file, during the parent-child relationship step. *See id.* at 15:19-21. In addition, Symantec itself recognizes that "the ability for data to be written to a child virtual-disk file so that its parent virtual-disk file remains unmodified is an essential part of the invention." Pl. Br. at 7.

Symantec argues that Veeam's proposed construction is too narrow because the parent-child relationship provides for other functions beside storing changes in the child file, such as copying data from the second virtual-disk file to the first virtual-disk file in order to create a synthetic full backup. No. C 12-5443, Docket No. 73, Symantec's Reply Claim Construction Brief ("Pl. Reply") at 4-5. However, Veeam's proposed construction does not preclude the parent-child relationship from having other functions. Accordingly, the Court construes **creat[e][ing] a parent-child relationship between the first virtual-disk file and the second virtual-disk file** as: **logically connecting two virtual-disk files so that changes intended for the parent virtual-disk file are first stored in the child virtual-disk file.**

### B.  The '527 Patent

The '527 patent (Data Restore Mechanism) is directed to systems and methods for performing data restores from backups while applications are active and processing the data being restored. '527 Patent at 2:19-21. The '527 patent addresses the problem when, during data restores, an application has to wait a considerable amount of time for a particular file to be fully restored before being able to access the file. *Id.* at 1:66-2:8. A representative claim reads (terms to be construed in bold):

    1. A system, comprising:
    a **primary storage**;
    a backup storage;

7

> a **restore application** configured to **restore** a set of files from the backup storage to the **primary storage**; and
> a file server configured to, during said **restore**:
> determine that one or more blocks of data of a file in the set of files needed by an application have not been restored; and
> direct the **restore application** to **restore** the determined one or more blocks of data in response to said determination that the one or more blocks of data have not been **restore**d;
> wherein the **restore**d one or more blocks of data are accessible by the application while said **restore** is in progress.

*Id.* at 10:23-38.

### 1. *primary storage*

| Symantec | Veeam |
|---|---|
| "destination for restored data" | "physical storage accessed by the file server on behalf of a running application" |

Symantec's proposed construction is supported by the claim language. The independent claims of the '527 patent distinguish between primary storage and backup storage by requiring that the files are restored "from [the] backup storage to [the] primary storage." '527 Patent at 10:26-27, 11:48-49, 11:60-61, 12:46-47. Therefore, under the claim language, the primary storage is the destination for the restored files. This is consistent with the language in the specification. *See id.* at 2:27-30, 2:35-45.

Veeam's proposed construction seeks to add the restriction that the primary storage must be physical storage. To support adding this restriction, Veeam relies on descriptions of preferred embodiments in the specification that refer to physical storage. Def. Br. at 7 (citing '527 Patent at 1:21-22, 6:18-19, 8:41-42). "'[I]t is improper to read limitations from a preferred embodiment described in the specification – even if it is the only embodiment – into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited.'" *DealerTrack, Inc. v. Huber*, 674 F.3d 1315, 1327 (Fed. Cir. 2012). There is no language in the patent stating that the primary storage must be physical storage. Veeam also argues that because the invention requires block-level access, the primary storage must be physical storage. Def. Br. at 7. In making this argument, Veeam relies on the following sentence from the Background of the Invention section: "Block-level access uses physical storage addresses to access data and thus need not be 'assisted' by some entity having file system and/or

1 volume knowledge." '527 Patent at 1:49-51. However, this sentence is merely describing the
2 differences between block-level access and file-level access in storage disks; this sentence is not stating
3 that block level access can only be achieved on physical storage. Therefore, the Court declines to limit
4 primary storage to physical storage.

Veeam's proposed construction also seeks to define primary storage as storage that is accessed
by the file server on behalf of a running application. But, this additional language fails to distinguish
the primary storage from the backup storage. Under the patent, both the primary storage and the backup
storage may be accessed by the file server on behalf of a running application. *See* '527 Patent at
7:33-54, 8:58-67. Veeam argues that the file server does not access the backup storage because
according to the patent the file server must use the restore application as an intermediary to access the
backup storage. Def. Br. at 7-8. But, this argument fails to consider that in some embodiments of the
invention, the restore application is part of the file server. *See* '527 Patent at 4:21-23 ("In one
embodiment, restore application 112 may be on file server 102 with file server 102 with file system
110."); *see also id.* at 8:46-48. Therefore, in that embodiment, the file server, containing the restore
application, directly accesses the backup storage. Accordingly, the Court declines to adopt Veeam's
proposed construction, and the Court construes **primary storage** as: **destination for restored data**.

### 2. *restore*

| Symantec | Veeam |
|---|---|
| "recover" | **Original Construction:** "copy data block from backup storage to primary storage" |
| | **Modified Construction:** "copy [data block of a file from backup storage to primary storage]" |

The parties disagree as to whether the data being restored must be transferred from the backup
storage to the primary storage. The claim language of the '527 patent states that the files are restored
from the backup storage to the primary storage. '527 Patent at 10:26-27, 11:48-49, 11:60-61, 12:46-47.
This is also supported by the specification. *See, e.g.*, *id.* at 2:36-43, 6:40-42. Symantec argues that a
construction requiring that the restore data be transferred from backup storage to primary storage is

9

1 incorrect because it would exclude a preferred embodiment, relying on figure 2 of the '527 patent. Pl.
2 Br. at 13. Symantec argues that figure 2 describes an embodiment where the data is transferred by the
3 restore application from the backup storage to the file system. *Id.* (citing '527 Patent at 7:55-59).
4 However, the specification further explains that in this embodiment the data is then transferred from the
5 file system to the primary storage. '527 Patent at 7:44-47 ("[T]he restore application may provide the
6 block directly to the file system 110, which may then write the block to the primary storage."); *see also*
7 *id.* at 5:42-5:56. Therefore, under that preferred embodiment, the data being restored is still ultimately
8 transferred from the backup storage to the primary storage.

9 The parties also disagree about whether the term "restore" should mean to recover or to copy
10 files. Veeam argues that if the data restoration does not involve copying data, then the backup storage
11 would no longer function as a backup because it would no longer contain the backed up data. Def. Br.
12 at 10. The Court agrees. Symantec argues that "copying" is an improper construction because this
13 construction would exclude a preferred embodiment where the data is restored from the backup storage
14 directly to the file system. Pl. Br. at 13-14. However, Symantec fails to explain why in that
15 embodiment the data being sent from the backup storage to the file system would not also be copied so
16 that the backed up data remains on the backup storage. Accordingly, the Court construes **restore** as:
17 **copy [data block of a file from backup storage to primary storage]**.

### 3.   *restore application*

| Symantec | Veeam |
|---|---|
| "program used in performing a data recovery option" | "software running on a device other than the file server" |

Veeam argues that the Court should construe this term to require that the restore application run on a device other than the file server. Def. Br. at 11. However, the specification describes an embodiment where the restore application is on the file server. *See* '527 Patent at 4:21-23 ("In one embodiment, restore application 112 may be on file server 102 with file system 110."); *see also id.* at 4:23-26, 8:46-48. A claim construction that excludes a preferred embodiment is rarely, if ever, correct

10

and requires highly persuasive evidentiary support. *Synqor, Inc. v. Artesyn Techs., Inc.*, 709 F.3d 1365, 1378-79 (Fed. Cir. 2013). Veeam has failed to provide the Court with such support. Veeam argues that the two claim elements must be separate because the claims list the restore application and the file server as two separate elements. Def. Br. at 11. Generally, where a claim lists elements separately, the clear implication of the claim language is that those elements are separate distinct components of the patented invention. *Becton, Dickinson & Co. v. Tyco Healthcare Group, LP*, 616 F.3d 1249, 1254 (Fed. Cir. 2010); *Gaus v. Conair Corp.*, 363 F.3d 1284, 1288 (Fed. Cir. 2004). However, this implication can be rebutted by language in the specification stating that the two elements need not be separate components. *See, e.g.*, *Powell v. Home Depot U.S.A., Inc.*, 663 F.3d 1221, 1231-32 (Fed. Cir. 2011) ("Here, the disclosure in the specification cuts against [defendant's] argument that the 'cutting box' and 'dust collection structure' must be separate components for purposes of the infringement analysis."). Here, the specification expressly states that the restore application may be on the file server. '527 Patent at 4:21-26, 8:46-48. Therefore, the Court declines to adopt Veeam's proposed construction.

The claim language of the '527 patent describes the restore application as a program that performs the data restoration of the files. '527 Patent at 10:26-36, 11:60-12:4, 12:46-57. In addition, the specification describes the restore application as being part of the restore mechanism along with the file system and/or volume manager. *Id.* at 2:21-26. Because the patent uses the word "restore" rather the word "recovery," the Court's construction of this term will use the word "restore." Accordingly, the Court construes **restore application** as: **a program used in performing the data restore**.

### C. The '822 Patent

The '822 patent (Recovery and Operation of Captured Running States From Multiple Computing Systems on a Single Computing System) is directed to mechanisms for restoring access to running states of multiple primary computing systems onto a single computing system. '822 Patent at 1:64-2:2. The problem addressed by the '822 Patent is efficiently restoring access to data and other operational states of multiple primary computing systems, even if the primary computing systems are no longer available, and without necessarily requiring replacement computing systems that have identical hardware as the lost primary computing systems. *Id.* at 1:54-60. A representative claim reads (terms to be construed

11

in bold):

> 1. A method for restoring access to running states of a plurality of **primary computing system**s onto a single computing system, the method comprising the following:
> an act of accessing a captured running state of each of the **primary computing system**s on the single computing system, wherein the captured running states each include, or are altered to include, at least one device driver that is configured to interface with a common virtualization component that runs on the single computing system, wherein the common virtualization component is configured to at least indirectly interface with hardware on the single computing system that operates at least part of the hardware using a different interface than the at least one device driver is configured to interface with;
> an act of identifying a boot order for each of the **primary computing system**s; and
> an act of booting the captured running states for each of the **primary computing system**s in the identified boot order on the single computing system.

*Id.* at 13:3-23.

### 1. *primary computing system*

| Symantec | Veeam |
|---|---|
| "a computing system that maintains and operates upon active data" | "a computing system to be virtualized" |

Symantec's proposed construction is supported by the intrinsic record. In describing the differences between a primary computing system and a backup computing system, the '822 patent's specification describes a primary computing system as a system that "maintains and operates upon the active data." '822 Patent at 1:16-17. Veeam argues that the statement in the specification is irrelevant because it is describing the prior art, not the invention. Def. Br. at 15-16. The Court disagrees. Although the description appears in the "Background of the Invention" section of the '822 patent, there is no language in the patent suggesting that the description provided is limited to only the prior art.

Veeam argues that the Court's construction should define the term as "a computing system to be virtualized." Def. Br. at 13-15. Veeam argues that claim 1 requires that the captured running states of the primary computing systems are virtualized on the single computing system. *Id.* at 13. Even assuming Veeam is correct, it is the captured running state that is virtualized, not the primary computing system. Veeam further argues that the captured running state of a computing system is a virtualized version of the primary computing system. *Id.* But, Veeam does not cite to any language in the patent to support this statement. Therefore, the Court declines to adopt a construction that requires that the

12

computing system — rather than the running state — is virtualized. In addition, Symantec correctly argues that Veeam's proposed construction is improper because it requires that the running state be virtualized during the claimed operation. No. C 12-5443, Docket No. 73, Symantec's Reply Claim Construction Brief ("Pl. Reply") at 11. But, the claim language and the specification recognize that the captured running state may already be virtualized. *See* '822 Patent at 5:21-30, 13:6-12. Therefore, the Court declines to adopt Veeam's proposed construction. Accordingly, the Court construes **primary computing system** as: **a computing system that maintains and operates upon active data**.

### D. The '861 Patent

The '861 patent (Techniques for Efficient Restoration of Granular Application Data) is directed to techniques for efficient restoration of granular application data. '861 Patent 1:44-45. The '861 patent addresses the problems associated with restoring portions of application data, such as being time consuming and requiring significant processing resources. *Id.* at 1:13-24. A representative claim reads (terms to be construed in bold):

> 1. A method for restoring one or more portions of application data comprising:
> performing a full backup;
> exporting one or more backup files;
> creating a specified **staging area**;
> **virtualizing** the one or more backup files of the application data into the specified **staging area**;
> running a **recovery process** for the one or more backup files wherein the recovery process includes:
> enabling recovery by writing recovery changes to one or more recovery files, wherein writing recovery changes to one or more recovery files allows the one or more backup files to remain unmodified; and
> saving the one or more backup files and the one or more recovery files;
> **virtualizing** the one or more backup files and the one or more recovery files;
> instantiating an instance of an application utilizing the **virtualize**d one or more backup files and the **virtualize**d one or more recovery files; and
> recovering one or more portions of the application data.

*Id.* at 7:31-51.

### 1.   *virtualiz[e][ing]*

| Symantec | Veeam |
|---|---|
| "provid[e][ing] an abstraction" | "creat[e][ing] a simulated version of an existing file that emulates the existing file" |

Symantec's proposed construction has no support in the claim language or the specification. In support of its proposed construction, Symantec relies heavily on the prosecution history. Symantec argues that a piece of prior art, Rajan, describes virtualization as a type of abstraction, and during the prosecution of the '861 patent, the examiner rejected several claim of the patent as anticipated by Rajan. Pl. Br. at 19-21. Symantec argues that, therefore, the prosecution history shows that its proposed construction is consistent with the examiner's understanding of the term "virtualization." *Id.* at 20. The Court has reviewed the relevant prosecution history and concludes that it does not provide a clear definition for the term "virtualization." During prosecution of the '861 patent, the examiner rejected several claims as anticipated by Rajan and specifically found that Rajan disclosed virtualization. Docket No. 67-2, Chen Decl. Ex. F at 4-5. The patentee then amended the claims, making changes to limitations other than the virtualization limitation. *Id.* Ex. H. But, it is unclear from the prosecution history, how the examiner defined virtualization. Symantec argues that virtualization is defined in Rajan as a type of abstraction, but there is nothing in the prosecution history showing that the examiner or the patentee would agree with Symantec's interpretation of Rajan. *Cf. Phillips*, 415 F.3d at 1317 (explaining that the prosecution history "often lacks the clarity of the specification and thus is less useful for claim construction purposes"). Therefore, the Court declines to adopt Symantec's proposed construction.

Veeam's proposed construction is supported by the intrinsic evidence. The independent claims of the '861 patent all require instantiating "an instance of an application utilizing the virtualized one or more backup files and the virtualized one or more recovery files." '861 Patent at 7:48-50, 8:62-64, 9:18-20. Veeam correctly argues that if the virtualized versions of these files are not simulated versions that emulate the files in some way, then they would not be able to be utilized to instantiate an instance of the application. *See* Def. Br. at 19; *see also* '861 Patent at 6:4-12. Veeam's proposed construction is also

14

consistent with claim 2 of the patent, which requires that the virtualized files emulate a recovered data store, enabling the running of an application utilizing the data store. '861 Patent at 7:52-55. Therefore, the Court adopts Veeam's proposed construction.

Symantec argues that Veeam's proposed construction violates the principle of claim differentiation because it seeks to limit the term "virtualizing" to how it is defined in claim 2 of the patent. Pl. Br. at 21-22. The Court disagrees. "Under the doctrine of claim differentiation, dependent claims are presumed to be of narrower scope than the independent claims from which they depend." *AK Steel Corp. v. Sollac*, 344 F.3d 1234, 1242 (Fed. Cir. 2003); *see also Nazomi Commc'ns, Inc. v. Arm Holdings, PLC.*, 403 F.3d 1364, 1370 (Fed. Cir. 2005) ("Claim differentiation 'normally means that limitations stated in dependent claims are not to be read into the independent claim from which they depend.'"). Under Veeam's proposed construction, claim 2 is narrower than claim 1. Under the construction, claim 1 requires that the simulated versions of the backup and recovery files are such that they can be utilized to instantiate an instance of an application. *See* '861 Patent at 7:48-50. In contrast, under Veeam's construction, claim 2 requires that the simulated versions of those files have that capability and can also enable the running of an application utilizing the data store. *See id.* at 7:54-55. Therefore, the Court rejects Symantec's claim differentiation argument.

The Court agrees with Symantec's contention that Veeam's proposed construction is improper because it only refers to virtualizing a file, i.e., one file. *See* Pl. Br. at 21. The claims describe "virtualiz[e][ing] the one or more backup files and the one or more recovery files." '861 Patent at 7:46-47, 8:60-61, 9:16-17. Therefore, the Court amends Veeam's proposed construction to refer to one or more files. Accordingly, the Court construes **virtualiz[e][ing]** as: **creat[e][ing] a simulated version of one or more existing files that emulates the one or more existing files.**

### 2. *staging area*

| Symantec | Veeam |
|---|---|
| "storage space utilized for the recovery of one or more application data stores" | **Original Construction:** "a temporary area on storage used in the recovery process" <br><br> **Modified Construction:** "an area on storage solely used during an application data restoral operation" |

Symantec argues that the Court should adopt its proposed construction because the patentee acted as his own lexicographer and defined the term "staging area" in the specification. Pl. Br. at 22. "To act as its own lexicographer, a patentee must 'clearly set forth a definition of the disputed claim term' other than its plain and ordinary meaning." *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012). Symantec relies on the following language in the specification: "Staging area 170 may represent storage space utilized for the recovery of one or more application data stores." '861 Patent at 4:36-37. The use of the permissive word "may" in this sentence suggests that the patentee was not setting forth a definition for the term "staging area." *See i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 844 (Fed. Cir. 2010) (declining to limit claim term where the specification used permissive language). Therefore, the Court declines to adopt Symantec's proposed construction.

Veeam's proposed construction requires that the staging area is used solely during an application data restoral operation. Def. Br. at 20-21. Veeam argues that its proposed construction is supported by the claim language, but there is no language in the claims requiring that the staging area is only used for application data restoration. The claims merely state that the staging area is created prior to virtualization of the backup files of the application data and the start of the recovery process. '861 Patent at 7:35-37, 8:49-51, 9:5-7. The claims do not specify what happens to the staging area after the application data is restored or whether the staging area may be used for other operations. Therefore, the Court declines to adopt Veeam's proposed construction.

The claim language of the '861 patent describes the staging area as the area where the virtualized backup files of the application data are placed prior to the recovery process. '861 Patent at 7:36-37, 8:50-51, 9:6-7. Consistent with this, the specification further provides that "backup data may be virtualized into a staging area," and that then the recovery process may begin. *Id.* at 5:39-40, 5:55-57.

Further, the parties agree that the staging area is on storage. Accordingly, the Court construes **staging area** as: **"an area on storage into which the backup files of the application data are virtualized prior to the recovery process."**

### 3. *recovery process*

| Symantec | Veeam |
|---|---|
| "process of restoring backup data" | "a process performed on application data to allow the application data to be recovered" |

The claims of the '861 patent give a detailed description of what is meant by the term recovery process. Independent claims 1, 12, and 13 provide: "[T]he recovery process includes: enabling recovery by writing recovery changes to one or more recovery files, wherein writing recovery changes to one or more recovery files allows the one or more backup files to remain unmodified; and saving the one or more backup files and the one or more recovery files." '861 Patent at 7:39-45, 8:53-59, 9:9-15; *see also id.* at 2:5-11 (specification). Because the claims themselves define this term, the Court concludes that a construction of this term is unnecessary. At the hearing, Symantec agreed that this term did not need to be construed. Although Veeam offers a construction for this term, in its brief, Veeam itself states that the claims require a specific recovery process where recovery changes are written to one or more recovery files, and the one or more backup files and recovery files are saved, allowing the one or more backup files to remain unmodified. Def. Br. at 22-23. Veeam's explanation of the recovery process claimed in the '861 patent tracks the language already contained in the claims. "Claim construction 'is not an obligatory exercise in redundancy.'" *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1361 (Fed. Cir. 2008) (quoting *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997)).

Moreover, the Court rejects Veeam's proposed construction, which incorrectly states that the recovery process is performed on the application data. The independent claims of the '861 patent state

that the recovery process is "for the one or more backup files," not the actual application data. '861 Patent at 7:38, 8:52, 9:8. Accordingly, the Court declines to construe the term recovery process.

## **CONCLUSION**

For the foregoing reasons and for good cause shown, the Court adopts the constructions set forth above.

**IT IS SO ORDERED.**

**Dated: January 17, 2014**

_____
**SUSAN ILLSTON**
**United States District Judge**